# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

VOLVO FINANCIAL SERVICES,
a division of VFS US LLC                                                          PLAINTIFF

v.                                                            CAUSE NO. 1:17CV104-LG-RHW

ELVIS WILLIAMSON                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER
## REGARDING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the [12] Motion for Summary Judgment filed by Plaintiff Volvo Financial Services, and the [14] Motion for Partial Summary Judgment filed by Defendant Elvis Williamson in this breach of contract case. Volvo seeks to recover deficiency judgments for tractor trailer trucks Williamson financed through Volvo. Williamson argues that a portion of Volvo's claim is barred by the statute of limitations. Both Motions have been fully briefed. The Court finds that the statute of limitations does not bar any part of Volvo's claim. Accordingly, Williamson's Motion for Partial Summary Judgment will be denied. Further, the Court finds no question of material fact concerning whether Volvo is entitled to the deficiency judgment it seeks. Volvo's Motion for Summary Judgment will be granted and a separate judgment entered.

BACKGROUND

There are eight trucks at issue in this case, each purchased separately with financing by Volvo and secured with a separate promissory note. Williamson's purchase of the trucks, and Volvo's financing of the purchases, occurred between 2014 and 2015. In 2016 and 2017, Volvo repossessed and sold seven of the trucks

(Notes 1-5, 7, 8). Volvo received insurance proceeds on the truck secured by Note 6 and that disposition is not contested in this case. Each disposition resulted in a deficiency balance, all of which are set out in the Attachment to this Order.

The parties agree that North Carolina law controls interpretation of the Promissory Notes, but Mississippi supplies the controlling procedural law. Volvo moves for summary judgment asserting undisputed evidence that Williamson failed to fully pay the eight Promissory Notes and therefore breached the contracts under North Carolina law. Volvo contends that as a result, it is entitled to a deficiency judgment, because it disposed of the trucks in a commercially reasonable manner after providing reasonable notice to Williamson. Williamson defends against the Motion on the grounds that 1) Volvo acted in a commercially unreasonable manner when it sold the trucks secured by Notes 5, 7 and 8; 2) Volvo did not give commercially reasonable notice when it sold the trucks secured by Notes 1-5, 7 and 8; and 3) the sales prices of the trucks secured by Notes 7 and 8 were grossly inadequate.

In Williamson's Motion for Partial Summary Judgment, he asserts that Volvo's deficiency claims on the first four promissory notes are barred by the statute of limitations in Miss. Code Ann. § 15-1-23. Under that statute, a deficiency claim must be "commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes." Accordingly, Williamson requests dismissal of Volvo's deficiency claims as to the first four promissory notes because the trucks pledged as security were sold more than one

year before the lawsuit was filed. Volvo argues in opposition that the Notes provided for cross-collateralization, meaning that each of the Notes secured all of Williamson's obligations to Volvo. Volvo argues the Complaint was timely because the first four Notes remained secured until all of the trucks were sold.

DISCUSSION

**1. The Statute of Limitations**

Each of the Notes at issue contains the following choice of law provision: "This Note shall be effective only when accepted by Lender and shall be governed by the substantive (and not choice of law or conflicts) laws of the State of North Carolina." The parties agree that this provision means that in this diversity case, the Court should apply Mississippi's procedural law and North Carolina's substantive law. Mississippi classifies statutes of limitations as procedural. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006).

Williamson argues that the one-year limitation period in Miss. Code § 15-1-23 applies to the Notes in this case. The statute provides that any lawsuit "brought upon any installment note, or series of notes of three or more" is barred unless it is "commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes." The first four truck sales took place during a one month period between January 27 and February 26, 2016. (Volvo Mot. Summ. J. Ex. 2A-D, ECF No. 12-2). This lawsuit was filed on April 10, 2017, more than one year from the sale of the last of the group of four trucks. Williamson contends that Volvo may not obtain a deficiency judgment that includes

amounts due under the Notes secured by those four trucks.

After Williamson asserted his statute of limitations defense, it became Volvo's burden to "show some legal or equitable basis for avoiding such period of limitations." *Stroud v. Progressive Gulf Ins. Co.*, No. 2016-CA-00750-COA, 2017 WL 4129619, at *3 (Miss. Ct. App. Sept. 19, 2017) (quoting *Hall v. Dillard*, 739 So. 2d 383, 387-88 (¶ 19) (Miss. Ct. App. 1999). Volvo argues that the statute of limitations had not been triggered prior to the sale of all of the trucks because of the cross-collateralization language in the Notes. Volvo highlights the following language in the "Security Interest" provision appearing on the first page of each Note:

> In order to secure (i) payment of the Indebtedness, all other debts and obligations at any time owed by Borrower to Lender or its affiliates, and (ii) complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into, Borrower hereby grants to Lender a security interest in and to the equipment described above (the "equipment") . . . . "Loan Documents" means this Note, all other loans made by, or obligations of, Borrower to Lender . . . .

(*See, e.g.,* Volvo Mot. Summ. J. Ex. 1 A, at p. 2, ECF No. 12-1).

Volvo argues that this language "effectively created a global indebtedness secured by all of the Equipment." (Volvo Resp. 4, ECF No. 20). Therefore, according to Volvo, the sale of trucks in January and February 2016 was not sufficient to trigger the statute of limitations as to any Note because all of the Notes were secured by all of the trucks. Only after all of the trucks had been sold, and there was no more property securing the Notes, were the Notes "foreclosed" upon as

-4-

contemplated by the statute. As the remaining four trucks were sold within the limitation period, it is irrelevant that the first four were sold outside of the limitations period.

There are no Mississippi cases applying the statute of limitations in Miss. Code Ann. § 15-1-23 to a note containing the cross-collateral clause at issue here. Williamson urges the Court to consider each Note and each truck separately. However, in the Court's view, the Notes never concerned only one piece of equipment. Each Note contemplated additional security, and each successive purchase added a piece of equipment as security for each Note then existing. Unlike the cases cited by Williamson, the Notes here had additional equipment securing them even after the equipment initially securing the Note was sold. For example, in the *Commercial Agency v. Loe* case cited by Williamson, a plane securing a note was repossessed and sold, creating a deficiency. There was no question that all of the property securing the note was sold on a particular day. *Commercial Agency v. Loe*, 667 F. Supp. 359, 365 & n. 5 (S.D. Miss. 1987). The same is true of *Guthrie v. The Merchants National Bank of Mobile*, 180 So. 2d 309, 311, 315 (Miss. 1965) (all property securing single note sold outside limitation period) and *Rankin County Bank v. McKinion*, 531 So. 2d 822, 823 (Miss. 1988) (same). These cases do not answer the question presented in this case, which is whether a partial sale of security triggers the one year statute of limitations. Thus, the Court must make an *Erie* guess and predict how the Mississippi Supreme Court would resolve the issue if presented with the same case. *BancPass, Inc. v. Highway*

*Toll Admin., L.L.C.*, 863 F.3d 391, 401 (5th Cir. 2017).

Initially, the Court concludes that although nominally eight promissory notes are involved here, they are, in effect, one note secured by eight trucks by operation of the cross-collateralization clause in each Note. The next question is whether the first or last truck sale triggered § 15-1-23. In this regard, the statute is ambiguous, since "the foreclosure or sale of the property pledged as security for said note or notes" could refer to one or all items of property pledged as security.

If an ambiguity in a statute exists, a court must "turn to the principles of statutory construction." *Oktibbeha Cty. Hosp. v. Miss. State Dep't of Health*, 956 So. 2d 207, 212 (Miss. 2007). In doing so, "it is the Court's duty to 'carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case.'" *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid,* 21 So. 3d 600, 608 (Miss. 2009) (quoting *Caldwell v. N. Miss. Med. Ctr.*, 956 So. 2d 888, 891 (Miss. 2007)). To this end, "[w]hen reasonable, th[e] Court is obliged to reach an interpretation that gives effect to all of the statutory language." *Id*.

The Mississippi Supreme Court has considered the meaning of this statute, albeit in a different context. In the early case of *Lewis v. Simpson*, 167 So. 780, 781 (1936), the court found the statute to be ambiguous as to whether a junior mortgage holder who had not foreclosed was subject to the same limitation period as the senior mortgage holder who had foreclosed. The court held that Miss. Code Ann. § 15-1-23 applied only to the foreclosing party, stating that "[t]he outstanding

purpose of this legislation, . . . was to discourage the foreclosure of mortgages during the depression period. The title to the act clears up the uncertainty in the body thereof; in unmistakable language it plainly names the notes secured by the foreclosed mortgage." Although the holding does not directly apply to this case, the court's mention of the purpose of the statute is helpful.

The most reasonable interpretation of the statute when applied to the facts of this case is that the sale or foreclosure must be complete to trigger the limitation period. It can be expected that sales of multiple items pledged as security for a single note will occur over some period of time, and it would serve no purpose to require the foreclosing party to file more than one lawsuit if sales spanned the limitation period. This interpretation has no effect on the purpose of the statute – to discourage the foreclosure of mortgages during the depression period. As noted above, the usual mortgage foreclosure situation involves one piece of property secured by a single note, generating no uncertainty about when the limitation period has commenced and no potential for multiple lawsuits. Those hazards exist only where, as in this case, multiple items of property are pledged as security for one promise to pay. Allowing the foreclosure/sales process to be completed before starting the one-year clock for an action on the note avoids these hazards.

The Court therefore concludes that the statute of limitations in Miss. Code Ann. § 15-1-23 does not bar Volvo's claim to a deficiency judgment that includes the disposition of the first four trucks. The plaintiff's Motion for Partial Summary Judgment will be denied.

## 2. Breach of Contract

Volvo asserts that it has established the elements of a breach of contract claim under North Carolina law – the presence of a valid contract, the breach of the terms of that contract, and damages. *Supplee v. Miller-Motte Bus. Coll., Inc.*, 768 S.E.2d 582, 590 (N.C. Ct. App. 2015). Williamson's response focuses on the damages element. He objects to Volvo's calculation of damages because he contends the disposition of the trucks was not commercially reasonable.

Volvo provided an affidavit from its remarketing manager explaining the repossession and sale of seven of the trucks. (Pl. Mot. Ex. 2, ECF No. 12-2). The manager states that all seven of the trucks Volvo repossessed from Williamson were in poor condition, and all but one had to be towed. (*Id*. at 3). The one not towed had been left by Williamson at the dealer with an open repair invoice. (*Id*.). Five of the trucks had unpaid repair bills totaling $14,888.28, which Volvo had to pay prior to obtaining the trucks from the dealers. (*Id*). All of the trucks were inspected by an independent appraisal service and repair/reconditioning costs estimated. (*Id*. at 3-4). Some of the reconditioning estimates were uncertain because they required additional work to fully diagnose, and therefore represented a minimum cost estimate. (*Id*. at 4). All trucks were placed for sale on Volvo's remarketing websites, VOLVOASSETS.COM and MACKASSETS.COM. (*Id*. at 3). Two were not sold through the websites, but were sold as salvage.

### a) Commercial Reasonableness

North Carolina's Uniform Commercial Code provides that, after default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing. N.C. Gen. Stat. § 25-9-610(a).

> A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> (1) In the usual manner on any recognized market;
>
> (2) At the price current in any recognized market at the time of the disposition; or
>
> (3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

*Commercial Credit Grp., Inc. v. Barber*, 199 N.C. App. 731, 737, 682 S.E.2d 760, 765 (2009) (citing N.C. Gen. Stat. § 25-9-627(b)(1)-(3)) (add'l citations omitted).

> This test for commercial reasonableness, however, is not exhaustive, and the U.C.C. further requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." N.C. Gen. Stat. § 25–9–610(b) (2007). "When deciding if a sale of repossessed collateral meets the statute[,] the trier of fact must consider all the elements of the sale together." *Don Jenkins & Son v. Catlette*, 59 N.C.App. 482, 484, 297 S.E.2d 409, 411 (1982) (citation omitted). As a result, whether a sale is commercially reasonable is an issue of fact determined "in light of the relevant circumstances of each case." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 722, 329 S.E.2d 728, 730 (1985).

*Commercial Credit Grp.*, 682 S.E.2d at 765.

Williamson's objections to the commercial reasonableness of the truck sales can be placed into three categories. First, as to all seven trucks, Williamson asserts

that Volvo did not give him commercially reasonable notice as required by N.C. Gen. Stat. § 25-9-613(1). Second, as to the two trucks sold as salvage, Williamson asserts they were not properly prepared for sale, were sold contrary to the terms of the notes, and the prices obtained were grossly inadequate. Third, Williamson asserts that the 2015 Volvo truck was not properly prepared for sale.

### 1. *Commercially Reasonable Notice*

Williamson asserts that Volvo failed to give the required notice of sale concerning seven trucks (Contracts 1-5, 7 & 8). Five of the trucks (Contracts 1-5) were sold on the websites VOLVOASSETS.COM and MACKASSETS.COM. Williamson asserts that the Notices of Sale he received for those sales did not comply with the terms of the Promissory Notes because they did not 1) mention that Volvo had selected an internet sale, or 2) contain any information regarding the advertisement of the time of commencement and electronic location of the internet sale. Further, the Notices were insufficient as a matter of North Carolina law because they lacked the intended method of disposition, and the time of commencement and digital location of the internet sale, as required by N.C. Gen. Stat. § 25-9-613(1)(c) & (e).

Volvo responds that Williamson is incorrect that the Promissory Notes require it to first give notice or advertise prior to selling on the internet. The "Rights and Remedies of Lender" provision in each Note states that

> Upon the occurrence of an Event of Default, Lender may, at its option . . . sell the [collateral] at a public or private sale(s) in the wholesale or retail market, with or without notice to the Borrower. Lender may also

>     advertise and sell repossessed Collateral through internet websites
>     through which equipment similar to the Collateral is sold and such
>     disposition shall be deemed in conformity with reasonable commercial
>     practice among dealers of the type of property that was the subject of
>     the disposition.

(*See, e.g.,* Pl. Mot. Ex. 1 A 3, ECF No. 12-1).

This provision does not require Volvo to give notice to Williamson that it had chosen to sell the trucks on internet websites. Nor does it require Volvo to "first advertise prior to" selling the trucks through the websites. It merely gives Volvo the option of using internet websites as a place to advertise and sell the trucks.

In regard to the alleged insufficiencies under North Carolina law, Volvo argues that it used "precisely the form" and included all information required for private sales by N.C. Gen. Stat. § 25-9-613. Review of the statute shows that Williamson refers to the notification requirements for a public electronic sale, where the parties agree that the sales here were private. A private sale requires only notice of "the time after which" a private sale will be made, and this is what the Notices provided. N.C. Gen. Stat. § 25-9-613(1)(e). According to the statute, the "method of intended disposition" is to be stated as either "in public" or "privately," not electronically or otherwise as Williamson claims. § 25-9-613(1)(c) & 5. The Court concludes that the Notices provided to Williamson were sufficient for the private sales of the trucks, both under the terms of the Promissory Notes and the requirements of the statute.

As to the trucks sold for salvage value (Contracts 7 & 8), Williamson alleges the Notices of Sale did not comply with the terms of the Promissory Notes because

they did not state that the trucks would be disposed of as salvage rather than in the "wholesale or retail market." Williamson does not provide support for his contention that the "salvage market" is outside the "wholesale or retail market," and the Court does not believe that it is. In any event, Volvo states it sold these trucks to a "third-party auction" company, which appears to be a wholesaler. (Pl. Mot. Ex. 2, at 8-9, ECF No. 12-2). This objection to the Notices of Sale is without merit.

### 2. *Sale Preparation and Sale as Salvage*

The 2005 and 2006 Peterbilt trucks (Contracts 7 & 8) were sold at salvage because Volvo believed that the reconditioning costs were in excess of the book value of the trucks.[1] The ultimate buyer has now listed the 2005 Peterbilt truck for sale at $29,000 and the 2006 Peterbilt at $32,000. (Def. Resp. Ex. 1,2, ECF Nos. 16-1, 16-2). Williamson argues that Volvo could have captured some of that increase in value if it had cleaned up and reconditioned the two Peterbilt trucks rather than selling them for salvage value.

Since the prices Williamson uses as a comparison are asking prices only at this point, the Court cannot consider them evidence of the actual current value of the 2005 and 2006 Peterbilt trucks. Further, there is no indication of the current

---

[1] In Volvo's Verified Complaint, it stated that Williamson refused to return either of these trucks, and requested that its security interest in the trucks be "recognized, maintained and enforced and said property be ordered to be turned over to the Plaintiff . . . ." (Pl. Compl. 14 (¶¶62, 64), 17 , ECF No. 1). This request for relief appears to be moot now that Volvo has obtained and sold the trucks.

condition of the trucks, or how much (if any) has been spent on reconditioning them. Both of these factors have an impact on the increase in value Williamson claims Volvo would have realized by reconditioning the trucks. Volvo states that only after unsuccessfully listing these two trucks on their websites did they sell them for salvage. (Pl. Mot. Ex. 2, at 6-7, ECF No. 12-2). Volvo was not required by the terms of the Note or North Carolina law to recondition the trucks before selling them, particularly given the very high, and uncontested, estimated reconditioning costs. *See* N. C. Gen. Stat. § 25-9-610(a) & cmt. 4.[2]

### 3. *Adequacy of Salvage Price*

Williamson also asserts that the price obtained for the two salvage trucks – $9500 each – was grossly inadequate. He makes three arguments. First, he compares the sales price to the "ACV" listed on the remittance forms from Insurance Auto Auctions, Inc. Williamson refers to "ACV" as the actual cash value or fair market value of the trucks. The 2005 Peterbilt had an "ACV" of $43,000. (Pl. Mot. Ex. 2, at 116, ECF No. 12-2) (ECF pagination). The 2006 Peterbilt had an "ACV" of $40,000. (*Id*. at 139) (ECF pagination). Second, he compares the sales price to NADA values for the trucks. The NADA value for the 2005 Peterbilt was $20,950

---

[2] Comment four to the statute states in part that "[a] secured party may not dispose of collateral 'in its then condition' when, taking into account the costs and probable benefits of preparation or processing and the fact that the secured party would be advancing the costs at its risk, it would be commercially unreasonable to dispose of the collateral in that condition."

N.C. Gen. Stat. Ann. § 25-9-610.

wholesale and $30,475 retail. (Pl. Mot. Ex. 2, at 120, ECF No. 12-2) (ECF pagination). The 2006 Peterbilt was valued at $28,550 wholesale and $40,010 retail. (*Id*. at 99) (ECF pagination). Third, Williamson contends that the gross inadequacy of the sales price is shown by evidence that the trucks are now being offered for sale by the new owner for $29,000 (2005 Peterbilt) and $32,000 (2006 Peterbilt). (Def. Resp. Ex. 1, 2, ECF Nos. 16-1, 16-2).

The North Carolina courts have suggested three factors for consideration in deciding if a resale price was adequate: 1) price handbooks, 2) expert testimony about fair market value, and 3) price received on a second resale. *Fritts v. Selvais*, 404 S.E.2d 505, 507 (N.C. Ct. App. 1991) (citing *Catlette*, 297 S.E.2d at 411).

There is no evidence concerning where the "ACV" listed on the Insurance Auto Auction remittance forms originated, or even what this term means or encompasses. The Court therefore cannot consider the "ACV" values as competent evidence concerning an adequate resale price.

As for the NADA values, Volvo argues that an adjustment is necessary to the listed wholesale value. According to Volvo, the mileage could not be determined for either truck because of electrical problems, and in those circumstances, the NADA allows a twenty-five percent reduction for "True Miles Unknown." (Pl. Mot. Ex. 2, at 7, 8, ECF No. 12-2). As adjusted, the NADA wholesale value of the 2005 Peterbilt was $15,712 and the 2006 Peterbilt wholesale value was $21,413. (*Id*.). The 2005 Peterbilt was estimated by the independent appraisal company to require $36,000 in reconditioning costs, which exceeded its estimated value of $15,712. (*Id*.

-14-

at 8). The 2006 Peterbilt was estimated to require $36,425 in reconditioning costs, which exceeded its estimated value of $21,413. (*Id*. at 7). The estimated reconditioning costs for both of these trucks exceeded the NADA wholesale values even when the NADA values are not adjusted for "True Miles Unknown." According to Volvo's remarketing manager, it is customary in the industry to sell these units as salvage, and the price Volvo obtained for the units was "more than the fair market value" and therefore the price represented a commercially reasonable fair market value. (Pl. Mot. Ex. 2, at 8, 9, ECF No. 12-2).

Williamson provides his testimony that "had Plaintiff took some steps to recondition or clean the 2005 and 2006 Peterbilt trucks as [the second reseller] apparently did, then the subject trucks would have sold for a higher price." (Def. Resp. Ex. 3, at 4, ECF No. 16-3). However, Volvo has submitted specific evidence of the value of the trucks versus the cost of reconditioning. Williamson offers neither a competing estimate of reconditioning costs nor shows that Volvo would have recouped more than it paid for the reconditioning. Therefore, as to the second factor the Court is to consider, the evidence concerning the NADA values for the trucks does not create a question of material fact regarding whether the price obtained by Volvo for resale of the 2005 and 2006 Peterbilt trucks was inadequate.

Williamson has provided current internet advertisements for the two trucks, presumably to show evidence of the third factor - the price received on a second resale. However, the prices now being asked for the two trucks does not constitute evidence of the price received on a second resale. Furthermore, the advertisements

do not include any information about the current condition of the trucks. (*See* Def. Resp. Ex. 1, 2, ECF Nos. 16-1, 16-2). If the trucks have been repaired to some extent, then they are not the same items and the prices cannot be compared. The Court therefore does not find any competent evidence of the price received on a second resale.

Considering all of the circumstances of the sales of the salvage trucks and in particular, the factors singled out as relevant by North Carolina courts, this Court finds no evidence creating a question of material fact regarding whether the sales prices of the two trucks sold as salvage were inadequate.

### 3. *Sale Preparation for 2015 Volvo Truck*

In regard to the 2015 Volvo truck, Williamson argues that Volvo could have obtained a higher price if it had reconditioned the truck rather than selling it in "as is" condition. Williamson asserts in an affidavit that "[s]ince I have bought and sold large trucks for many years, had Plaintiff reconditioned the 2015 Volvo, they would have been able to secure higher price at the online sale of the truck." (Williamson Aff. 4, ECF No. 16-3). The NADA wholesale value for the truck was $89,400, and the truck was estimated to require $8550 for reconditioning, resulting in a "target wholesale value" of $80,850. (Pl. Mot. Ex. 2, at 7, ECF No. 12-2). Volvo sold it for $69,010, which was the highest bid out of eight, but almost eleven thousand dollars less than the target wholesale value. (*Id.*). There is no explanation for the difference between the estimated book value and the sales price, but that does not mean the sale was commercially unreasonable. *See In re Marshall*, 219 B.R. 687,

-16-

690 (Bankr. M.D.N.C. 1997) (fact that the price obtained was less than what expert had estimated to be the fair market value does not make the sale commercially unreasonable). Volvo states that eight bids were received on this truck, indicating that it was the subject of some interest from buyers. (Pl. Mot. Ex. 2, at 6-7, ECF No. 12-2). Although Williamson argues that Volvo should have reconditioned it first, its un-reconditioned condition was accounted for in the "target wholesale value." Volvo was not required by the terms of the Note or North Carolina law to recondition the truck before selling it. N. C. Gen. Stat. § 25-9-610(a) & cmt. 4. Furthermore, North Carolina courts "recognize the fact that a greater amount could have been obtained by a disposition occurring at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the disposition was made in a commercially reasonable manner." *Commercial Credit Grp., Inc.*, 682 S.E.2d at 767 (quoting N.C. Gen. Stat. Ann. § 25-9-627(a)) (other citations and quotation marks omitted). There is no evidence in this record that the lower sales price resulted from some commercially unreasonable sales method. *See* N.C. Gen. Stat. Ann. § 25-9-627, cmt. 2. Accordingly, the Court finds that no question of material fact is raised by Williamson's assertion that a higher price could have been obtained for the 2015 Volvo truck with better sales preparation.

CONCLUSION

The Court has made an *Erie* guess that the Mississippi Supreme Court would not apply the statute of limitations in Miss. Code Ann. § 15-1-23 to bar any portion

of the deficiency judgment sought in this case. Accordingly, the Defendant's Motion for Partial Summary Judgment is denied. Application of North Carolina law to the Promissory Notes and sales procedure that occurred here shows no question of material fact for the jury concerning whether the sales were commercially reasonable. Accordingly, the Plaintiff's Motion for Summary Judgment is granted. A judgment in favor of Volvo and against Defendant Williamson will enter in the requested amount of $268,956.62, plus interest, costs, and attorney's fees to be awarded upon application by Volvo.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [14] Motion for Partial Summary Judgment filed by Defendant Elvis Williamson is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that the [12] Motion for Summary Judgment filed by Plaintiff Volvo Financial Services is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff is entitled to judgment on the Promissory Notes and will be awarded the sum of $269,956.62, plus interest at the rates specified in the Promissory Notes that has accrued on the principal amount owed from the date of default until the date of the Court's Order.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff shall provide the Court with an accounting of attorneys' fees and evidence of their reasonableness by November 3, 2017. The defendant shall submit any objections to the amount of attorneys' fees sought by November 17, 2017.

**SO ORDERED AND ADJUDGED** this the 18th day of October, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

## Attachment

### Summary of Claimed Deficiencies

| Contract/Promissory Note | CM/ECF Location | Truck | VIN/Serial Number Ending In | Deficiency |
| --- | --- | --- | --- | --- |
| 1 | No. 12-1, at 19-22 | 2011 Volvo | 292725 | $45,791.34 |
| 2 | No. 12-1, at 25-28 | 2011 Volvo | 292726 | $40,640.28 |
| 3 | No. 12-1, at 31-34 | 2011 Volvo | 531262 | $39,398.81 |
| 4 | No. 12-1, at 37-40 | 2011 Volvo | 292566 | $44,912.19 |
| 5 | No. 12-1, at 43-47 | 2015 Volvo | 914127 | $40,228.37 |
| 6 | No. 12-1, at 50-53 | 2011 Mack | 016363 | $ 4,005.62 |
| 7 | No. 12-1, at 56-59 | 2006 Peterbilt | 886789 | $24,559.38 |
| 8 | No. 12-1, at 62-65 | 2005 Peterbilt | 860465 | $29,420.63 |
|   |   |   | **Total:** | **$268,956.62** |